UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY, a state of New Hampshire Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 05 C 2162 ) |
| DAVID CLARK, an Illinois citizen, and ROBIN CLARK, an Illinois citizen, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Clark Construction and Development, Inc. ("Clark Construction") entered into a contract with property owner McKinley IV, Inc. ("McKinley") to construct two group homes in Chicago. As a condition of federal housing law, the Clark Construction's principals, Defendants David Clark and Robin Clark, were required to furnish a surety bond guaranteeing Clark Construction's performance under the construction contract with McKinley. Defendants obtained this bond from Plaintiff Hanover Insurance Company ("Hanover"), who reserved the right to recover the bond amounts against Defendants in the event of default on their contractual obligations with McKinley.

When the project fell too far behind schedule to be finished by the agreed date of completion, McKinley declared Defendants in default of their obligations under their contract. Plaintiff subsequently filed this action under the court's diversity jurisdiction,[1] charging Defendants with breach of contract for failure to indemnify and hold Hanover harmless from bond claims totaling $276,429.01. Additionally, Plaintiff demands specific performance of the indemnity agreement with Defendants, requiring a posting of collateral in the amount of $855,870.99 against a total liability not to exceed the penal sum of $1,162,300.00. Defendant David Clark has since filed for

---

[1] Hanover is incorporated in New Hamphsire and has its principal place of business in Massachusetts. Defendants are residents of Illinois. (Defendants' Response to Pl. 56.1 Stmt. ¶¶ 1, 2.)

bankruptcy, leaving only Robin Clark as Defendant in this proceeding.

Plaintiff Hanover now moves for summary judgment, arguing that the plain language of the contract and established case law confirm Hanover's right to recover for breach of contract and obtain specific performance of the indemnity agreement. For the reasons set forth below, the motion is granted.

**FACTUAL BACKGROUND**

The facts relevant to this motion are largely undisputed. In October 2003, Clark Construction, a construction firm co-owned by Defendant Robin Clark and David Clark, entered into a lump sum contract under § 202 of the Housing Act of 1959 with the U.S. Department of Housing and Urban Development ("HUD") for the construction of two federally-financed group homes to be owned by McKinley. (Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts (hereinafter, "Pl. 56.1 Stmt."), at ¶ 5 (citing Lump Sum Construction Contract, Ex. A to Plaintiff's Complaint).) Pursuant to federal law, McKinley required that Clark obtain a surety bonds to guarantee Clark Construction's performance obligations under the contracts. (*Id.* at ¶ 6.) Plaintiff, as surety, issued payment and performance bonds in the penal sum[2] of $1,162,300.00 to McKinley and HUD on behalf of Clark Construction. (*Id.* at ¶ 6 (citing Dual Obligee Bond, Ex. B to Plaintiff's Complaint).)

As a condition for issuing these bonds, Plaintiff required that the "Indemnitors" (Clark Construction, and David Clark and Robin Clark, individually) enter into a General Agreement of Indemnity ("Indemnity Agreement") with Plaintiff. (*Id.* at ¶ 7 (citing General Agreement of Indemnity, Ex. C to Plaintiff's Complaint).) Defendant acknowledged in the Indemnity Agreement that she would indemnify and hold Hanover harmless from all liability under the bonds it issued on behalf of Clark Construction: The Indemnity Agreement provides that the Indemnitors shall "exonerate,

---

[2] "Penal sum" is a term of art, defined as "a sum to be paid as a penalty, esp. under the terms of a bond." *Merriam-Webster's Dictionary of Law*, 1996.

indemnify, and save harmless the surety from and against every claim . . . which the surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees" accrued by executing the bonds, investigating claims, defending suits, or enforcing the terms and conditions of the agreement. (*Id.* at ¶ 8 (citing Indemnity Agreement ¶ 2, Ex. C to Plaintiff's Complaint).) Additionally, the agreement requires the Indemnitors to pay Hanover "as soon as liability exists or is asserted against the Surety," and authorizes Hanover to demand that such funds be held in collateral until the Indemnitors provide evidence of Hanover's discharge from all bonds and liability. (Indemnity Agreement ¶ 3, Ex. C to Plaintiff's Complaint.) The agreement also grants Hanover the exclusive right to settle claims arising out of any bond against it and/or the Indemnitors and permits Hanover, in doing so, to "take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors." (*Id.*) Moreover, "[v]ouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefore." (*Id.*) Defendant does not contest the validity or enforceability of the Indemnity Agreement. (Defendant's Response to Pl. 56.1 Stmt ¶ 7.)

On December 19, 2004, Clark Construction filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court of the Northern District of Illinois. (Pl. 56.1 Stmt. ¶ 11.) On December 21, 2004, Albert Cueller, III, Division Director of McKinley, declared Clark Construction in default of its obligations under the construction contract. He cited the fact that the project was less than half completed with nine months remaining until the original estimated date of completion, as well as the lack of communication by Clark Construction to the building owners regarding the status of the project. (*Id.* at ¶ 9 (citing Letter from Cueller to Clark of December 21, 2004, Ex. D to Plaintiff's Complaint).) In her response to Plaintiff's 56.1 Statement, Defendant alleges that the cause of the defaults described in the letter of December 21, 2004 was McKinley's refusal to allow

Clark Construction to begin work for a period of at least five months. (Defendant's Response to Pl. 56.1 Stmt. ¶ 9 (citing Clark Aff. ¶ 6, Ex. A to Defendant's Response to Plaintiff's Motion for Summary Judgment (hereinafter "Def. Response").) According to Defendants, these delays cost Clark Construction significant amounts of money, culminating in the company's bankruptcy filing on December 19, 2004. (*Id.* at ¶ 9.) Plaintiff does not dispute Defendant's testimony regarding McKinley's role in the construction project's delay.

On December 22, 2004, David Clark telephoned the property owner to inform him that Clark would be turning the matter over to Hanover because he would not be able to perform under the terms of the contract and because Clark Construction was filing for bankruptcy. (Pl. 56.1 Stmt. ¶ 10 (citing letter from Cueller to Clark of February 3, 2005, Ex. E to Plaintiff's Complaint).) On February 3, 2005, Cueller advised Clark Construction that its obligations under the contract were terminated upon receipt of Clark's December 22, 2004 telephone call. (*Id.*) Defendant contests the date of termination; she notes language in the December 21 letter from McKinley suggesting that Clark Construction would have an opportunity to cure: "If you fail to remedy [the violations] in the time and manner permitted by the Contract, we will seek all redress and remedies available to us under the Contract and as permitted by law, including possible termination of the Contract." (Defendant's Response to Pl. 56.1 Stmt. ¶ 10 (citing letter from Cueller to Clark of December 21, 2004, Ex. D to Plaintiff's Complaint).)

The language of the contract does not explicitly specify the manner by which the contract may be deemed terminated. (Lump Sum Contract, Ex. A to Plaintiff's Complaint.) In March 2005, however, the United States Bankruptcy Court of the Northern District of Illinois entered an order deeming the executory contract between Clark Construction and McKinley rejected and granting Hanover relief from the automatic stay to the extent necessary to re-let the contract and otherwise conclude the work. (Pl. 56.1 Stmt. ¶ 12 (citing Order of March 22, 2005, Ex. F to Plaintiff's Complaint).) On March 8, 2006, Plaintiff entered into a Settlement Agreement and Release

4

("Settlement Agreement") with McKinley and HUD. (*Id.* at ¶ 14 (citing Settlement Agreement and Release, Ex. A to Grennan Aff.).) Pursuant to the Settlement Agreement and according to Robert Grennan, Assistant Vice President of Bond Claims at Hanover Insurance, Hanover paid the sum of $210,832.00 to McKinley and HUD to complete construction of the projects. (*Id.*; Payment Voucher, Ex. 1 to Grennan Supplemental Aff.)

In this action, Hanover seeks to recover the amounts it has already paid. In addition, Hanover asserts that Clark is liable for expenses Hanover incurred in connection with the investigation and defense of the bond claims. Specifically, to assist with its investigation and defense, Plaintiff hired the law firm of Leo & Weber, P.C., and the consulting firm Construction Consulting & Disbursement Services, Inc. (Pl. 56.1 Stmt. ¶ 16.) As of April 2006, Hanover has incurred a total of $36,905.19 in attorney fees and a total of $28,691.82 in consulting fees. (*Id.*; Leo & Weber, P.C. Invoices, Ex. B to Grennan Aff.; Construction Consulting and Disbursement Services, Inc. Invoices, Ex. C to Grennan Aff.) Plaintiff also alleges that there remain outstanding contingency claims against Hanover for "Excepted Matters"[3] pursuant to ¶ 4 of the Settlement Agreement with a total liability not to exceed the penal sum amount of $1,162,300.00 (Pl. 56.1 Stmt. ¶ 15 (citing Settlement Agreement, Ex. A to Grennan Aff.).) Defendant admits that the Settlement Agreement states the penal sum amount of $1,162,300.00, but denies that Hanover will ultimately be liable for that amount. (Defendant's Response to Pl. 56.1 Stmt. ¶ 15 (citing Clark Aff. ¶ 13).)

On January 21, 2005, Plaintiff served Defendant a letter demanding that Defendant indemnify and hold Hanover harmless from the bond claims, and post collateral for the claims in

---

[3] "Excepted Matters" comprise exceptions to the Settlement Agreement for which Hanover remains liable to McKinley/HUD. These include reimbursement for security expenses, obligations to hold harmless and indemnify McKinley/HUD, payment of costs to correct latent defects resulting from work or materials supplied by Clark Construction, additional title and insurance costs due to Clark Construction's default, as well as wage obligations and fees imposed by the Federal Labor Standards Act and Davis-Beacon Act. (Settlement Agreement, Ex. A to Grennan Aff.)

accordance with the terms of the agreement.  (Pl. 56.1 Stmt. ¶ 17 (citing letter from Weber to Clark of January 21, 2005, Ex. G to Plaintiff's Complaint).)  Of the two indemnitors originally sued, David Clark has filed bankruptcy.[4]  (Defendant's Response to Pl. 56.1 Stmt. ¶ 18.)  Robin Clark is the only remaining indemnitor, and she has neither indemnified Hanover nor posted collateral to date.  (Pl. 56.1 Stmt. ¶ 15; Defendant's Response to Pl. 56.1 Stmt. ¶ 15.)  Plaintiff now seeks judgment against her.

## **DISCUSSION**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, indicate no genuine issue as to any material fact, entitling the moving party to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Courts have found that summary judgment is an appropriate method of resolving disputes concerning indemnification agreements.  *See, e.g., Advanced Ground Sys. Eng'g, Inc. v. RTW Indus.*, 388 F.3d 1036, 1038 (7th Cir. 2004) (affirming summary judgment for plaintiff after finding that defendant had a duty to defend and indemnify plaintiff against tort claims arising from a failure of defendant's welding work).  Under the *Erie* doctrine, state law controls substantive decisions in this diversity case.[5]  *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002).

**Remedy for Breach of Contract**

Illinois state law establishes the validity and enforceability of indemnity agreements between a principal and a surety.  *Hanover Ins. Co. v. Smith*, 137 Ill. 2d 304, 561 N.E.2d 14 (1990).  In construing such agreements, the primary focus is to give effect to the intention of the parties, and

---

[4] Neither Plaintiff nor Defendant has disclosed when David Clark filed for bankruptcy or the nature of his bankruptcy filing.

[5] This court has jurisdiction over this suit according to 28 U.S.C. § 1332, as the matter in controversy is between citizens of different states and exceeds the value of $75,000.00.

when contractual terms are clear and unambiguous, the parties' intent must be discerned only from the language found within the contract. *Gardner v. Padro*, 164 Ill. App. 3d 449, 453, 517 N.E.2d 1131, 1133 (2d Dist. 1987). The terms of the Indemnity Agreement at issue here are clear and unambiguous. Defendant admits she is obligated by its terms to "exonerate, indemnify, and save harmless" Plaintiff from all claims it incurs by executing the bonds, investigating claims, defending proceedings to obtain release from liability, or enforcing the terms and conditions of the agreement. (Pl. 56.1 Stmt. ¶ 8 (citing Indemnity Agreement, Ex. C to Plaintiff's Complaint).) Plaintiff asserts it has incurred charges amounting to $276,429.01 in investigating and resolving bond claims against the agreement and enforcing the terms of the agreement. (Payment Voucher, Ex. 1 to Grennan Supplemental Aff.)

Defendant contends that summary judgment is inappropriate because issues of material fact exist regarding the funds Plaintiff has expended and the Settlement Agreement it executed with McKinley and HUD. (Def. Response, at 1.) Defendant contends that Plaintiff has not adequately accounted for expenditures beyond its vouchers for legal and consulting fees totaling $36,905.19 and $28,691.82, respectively. (*Id.* at 3) Without additional supporting documentation, Defendant urges, Plaintiff has not met its burden of showing that it was obligated to pay $210,832.00 to complete construction of the project. (*Id.*)

Plaintiff has submitted a payment voucher reflecting payment of $210,832.00 to McKinley/HUD on behalf of Clark Construction. (Payment Voucher, Ex. 1 to Grennan Supplemental Aff.) In addition, Plaintiff offers the sworn testimony of Robert Grennan, Plaintiff's Assistant Vice President of Bond Claims, regarding the amount required to complete the construction project after Clark Construction defaulted. (Grennan Supplemental Aff. ¶ 4, Ex. A to Pl. Reply.) Mr. Grennan's affidavit is *prima facie* evidence of the fact and amount of the Indemnitors' liability to Plaintiff. *See* Local Rule 56.1 Statement ¶ 8. Here, moreover, the plain language of the contract explicitly contemplates that vouchers will be held as "conclusive evidence of the fact and amount of such

liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefore." (Indemnity Agreement, Ex. C to Plaintiff's Complaint.) Illinois courts have held that a *prima facie* evidence provision, such as this agreement, satisfies the burden of a surety proving damages and costs and can only be defeated by a showing that the plaintiff acted in bad faith. *U.S. Fid. & Guar. Co. v. Klein Corp.*, 190 Ill. App. 3d 250, 255, 558 N.E.2d 1047, 150 (1st Dist. 1990).

In *U.S. Fidelity & Guar. Co. v. Klein*, the First District Appellate Court affirmed the trial court's holding that the discretionary language in the master surety agreement entitled the plaintiff to indemnity from the defendant provided the plaintiff believed in good faith that it was liable for the payments it made to third parties under the agreement. *Id.* at 255-56, 558 N.E.2d at 1050-51. Because the defendant presented no evidence of the plaintiff's bad faith in discharging its contractual obligations, the plaintiff's affidavit and vouchers were sufficient proof of the fact and amount of the indemnitors' liability. *Id.* Similarly, Plaintiff here has presented both an affidavit and vouchers confirming a total of $276,429.01 in unreimbursed losses and expenses as a result of the investigation and resolution of claims associated with the construction project. Defendant has submitted no evidence supporting its allegations of Plaintiff's bad faith. In the absence of such evidence, Plaintiff is entitled to recover $276,429.01 plus any additional documented costs and expenses incurred after April 2006.

**Specific Performance of Collateral Security Obligation**

Plaintiff has requested that Defendant place in trust $855,870.99 in collateral pursuant to the terms and conditions of the Indemnity Agreement. (Pl. Memo, at 11.) Defendant challenges the amount of collateral that Plaintiff demands as protection against the liability for Excepted Matters in the Settlement Agreement between Plaintiff and McKinley/HUD. (Def. Response, at 3.) Specifically, Defendant argues that the Lump Sum Contract that Plaintiff has provided as Ex. A to its Complaint is incomplete. (*Id.*) What is missing, according to Defendant, is a document Defendant refers to as a "schedule of a statement of values." (*Id.*) According to Defendant, that

8

document, which was part of the contract, contains no line item for security. Instead, Defendant asserts, McKinley itself had accepted the responsibility for providing security. (*Id.*) Notably, Defendant herself has not provided a complete copy of the original Lump Sum Contract, with schedule included, to support her allegations. Her contentions rely solely on an affidavit of David Clark in which Clark "challenge[s] the validity of the excepted matters in Paragraph 4" and recognizes "serious misgivings about the amount of money Hanover has required be paid or placed in collateral." (Def. Response, at 3; Clark Aff. ¶¶ 12-13, Ex. A to Def. Response.) Clark bases his misgivings upon his personal knowledge of the "construction contingency" left behind after McKinley terminated Clark Construction from the project and asserts that he "know[s] the amount will be much less that [sic] the amount Hanover seeks." (Clark Aff. ¶ 13, Ex. A to Def. Response.) He provides no additional evidence to support this assertion, however, nor does he otherwise challenge the evidence that the Settlement Agreement between McKinley/HUD and Hanover holds Hanover liable for $103,110.00 in security costs as an Excepted Matter. (Def. Response at 3; Settlement Agreement, Ex. A to Grennan Aff.)

Plaintiff notes that Illinois courts and other jurisdictions have routinely granted motions for summary judgment in favor of a surety for specific performance of the collateral security obligation of an indemnity agreement. *U.S. Fid. & Guar. Ins. Co. v. Cler Constr. Servs., Inc.*, No. 03 C 1405, 2003 WL 22508169, at *2 (N.D. Ill. Nov. 3, 2003); *see also Mountbatten Sur. Co. v. Szabo Contracting, Inc.*, 349 Ill. App. 3d 857, 812 N.E.2d 90 (2d Dist. 2004) (granting surety's motion for summary judgment partly on grounds of defendant's failure to comply with surety's demand for a collateral deposit, which constituted a default subject to injunctive relief under the indemnity agreement). Courts have traditionally analyzed the plain language of the indemnity agreement to determine a surety's right to obtain specific performance of collateral security. *See, e.g., American Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299-300 (2d Cir. 1989); *see also Safeco Ins. Co. v. Schwab*, 739 F.2d 431, 433-34 (9th Cir. 1984) (holding that an indemnity

agreement with a surety should be construed as requiring the indemnitor to provide collateral security upon demand by the surety and prior to actual bond loss). In *American Motorists*, the Second Circuit reversed the trial court's denial of the plaintiff's request for specific performance of the collateral security provision of its indemnity agreement with the defendant. 876 F.2d at 299-300. The indemnification agreement at issue there stated that "[a]ny demand upon [Plaintiff] by the [United States] shall be sufficient to conclude that a liability exists and [Defendant] shall then place [Plaintiff] with sufficient funds as collateral security to cover the liability." *Id.* at 299. The Second Circuit found that language "unambiguous" regarding the defendant's collateral security obligations and held that the defendant was required to post collateral security in the event of a demand against the plaintiff as surety on their bond. *Id.* at 299-300.

The language in Plaintiff's contract with Defendant is similar to what appears in the contract in the *American Motorists* case:

> Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. . . . The Surety shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for the Indemnitors) until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

(Indemnity Agreement, Ex. C to Plaintiff's Complaint.) As reflected in its Settlement Agreement with McKinley/HUD, Hanover remains liable for the "Excepted Matters" in an amount up to $1,162,300.00. (Pl. 56.1 Stmt. ¶ 15 (citing Settlement Agreement, Ex. A to Grennan Aff.).) As the Second Circuit noted in *American Motorists*, in the event that the claims against Plaintiff are reduced in value, Defendant would be entitled to the return of any of the excess collateral security funds. *American Motorists*, 876 F.2d at 300. Thus, if Defendant's "misgivings" regarding the amount of money held in collateral prove to be correct, she will be entitled to have her money returned to her. Absent any genuine issue of material fact as to the requirements of the plain

10

language of the contract, Plaintiff has the right to specific performance of Defendant's collateral security obligation in the amount of $855,870.99.

## **CONCLUSION**

Plaintiff's motion for summary judgment is granted. The plain language of the Indemnity Agreement between Plaintiff and Defendant requires Defendant to indemnify Plaintiff against all claims it incurs through execution of the bonds, investigation of claims, defense of proceedings to obtain release from liability, or enforcement the terms and conditions of the agreement. To date, these costs total $276.429.01, as established by payment vouchers and a sworn affidavit. Plaintiff is also entitled to any additional costs since April 2006 that are also supported by *prima facie* evidence. Additionally, Plaintiff is entitled to specific performance of collateral security by Defendant in the amount of $855,870.99, the remainder of the penal sum limit of Plaintiff's potential liability for Excepted Matters pursuant to the Settlement Agreement between Plaintiff and McKinley/HUD. The court enters judgment in favor of Plaintiff in the amount of $276,429.01, and directs Defendant to place $855,870.99 in trust as collateral security against future obligations under the bond agreement.

ENTER:

Dated: August 15, 2006

REBECCA R. PALLMEYER
United States District Judge

11